## PRINCE CASTLEBERRY v. STATE.

No. A-4130.   Opinion Filed Jan. 19, 1924.

(221 Pac. 1044.)

1. **Assault and Battery—Assault with Dangerous Weapon Includ-ed Within Assault with Deadly Weapon.** The offense defined by section 1764, Comp. St. 1921, an assault with a dangerous weapon, is a lesser degree of assault and included in the offense defined by section 1756, Id.

2. **Same—Undescribed Pocketknife not Deadly or Dangerous Weapon per Se—Question for Jury.** An undescribed pocketknife is not a deadly weapon, or a sharp or dangerous weapon, per se. In this case it was a question for the jury, and there was proof sufficient to warrant the jury to find the knife was dangerous.

Appeal from District Court, Pittsburg County; E. F. Lester, Judge.

Prince Castleberry was convicted of assault with a dangerous weapon, and he appeals. Modified and affirmed.

Guy L. Andrews, for plaintiff in error.

The Attorney General and John Barry, Asst. Atty. Gen., for the State.

BESSEY, J.  Prince Castleberry, defendant below, was by information filed April 1, 1921, charged jointly with Wesley Payne with an assault upon the person of Minnie Hoyle with a knife or dagger, with the intent to kill Minnie Hoyle.  At the trial, May 19, 1921, defendant Castleberry was by a verdict of the jury found guilty of "an assault with a dangerous weapon as charged in the information," and his punishment was assessed at imprisonment in the penitentiary for a term of three years. From the judgment on this verdict he appeals.

The charging part of the information is as follows:

"Then and there with a certain knife or dagger which said knife or dagger the said Prince Castleberry and the said Wesley Payne in their hands then and there had and held, in

and upon one Minnie Hoyle unlawfully and feloniously make an assault, and did then and there with the knife aforesaid attempt to kill the said Minnie Hoyle, with the unlawful intent then and there on the part of him, the said Prince Castleberry, and on the part of him, the said Wesley Payne, to kill the said Minnie Hoyle, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state.''

From the opening statement of counsel, the examination of the witnesses, and the instructions of the court, we assume that this prosecution was predicated upon the latter part of section 1756, Comp. St. 1921, which reads as follows:

"Any person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another, with any kind of firearm, airgun or other means whatever, with intent to kill any person, or who commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding ten years.''

The information based upon this section of the statutes is defective, in that there was no allegation setting out that the knife or weapon was a deadly weapon and because it does not state that a battery was committed. However, no objection was made to the sufficiency of the information by demurrer.

An assault and battery by means of a deadly weapon, in a manner likely to produce death, includes the lesser offense of felonious assault with a dangerous weapon, as defined by section 1764, Comp. St. 1921, which is as follows:

"Any person who, with intent to do bodily harm, and without justifiable or excusasble cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to

shoot at another, with any kind of firearm or airgun, or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

The court, after instructing the jury upon the law of assault with a deadly weapon, in a manner likely to produce death (section 1765, supra), then instructed them upon the lesser degree of the crime charged, and included in the greater, known as assault with a dangerous weapon, as defined in section 1764, supra. This instruction was as follows:

"You are instructed that there is contained in the information a lesser degree of crime charged, known as assault with a dangerous weapon. The statute of the state of Oklahoma, so far as applies to the law of this case, is as follows: 'Any person who, with intent to do bodily harm and without justifiable and excusable cause, commits any assault upon the person of another with any sharp or dangerous weapon is guilty of a felony known as assault with a dangerous weapon.'"

The procedure so followed by the court was in accordance with the holding of this court in the case of Clemons v. State, 8 Okla. Cr. 452, 128 Pac. 739. The statute first above quoted includes the lesser degree of assault defined by the latter and also simple assault and battery, and the latter statute also includes simple assault.

In order to determine which of the offenses was supported by the evidence, it will be necessary to analyze the major part of the evidence, as it appears in the record:

Minnie Hoyle was in charge of the local telephone exchange at the Busby Hotel at McAlester, where she was employed until 10:30 p. m. every alternate night. On the night of this assault she left the hotel at that hour to walk to her

home. On her way home she went into a cafe for something to eat, and after coming out of the cafe she proceeded a short distance towards home, when some one behind her shouted at her. Thinking it was her brother, who sometimes came to meet her, she stopped and was approached by the two defendants. Defendant Castleberry, according to her testimony, seized her roughly by the arm and in an abusive manner asked her where she was going. Continuing her statement as she gave it, we quote:

"I told him what my name was, and that I was going home, and I told him to turn me loose because he didn't know me, and he just kept on cursing. Then a closed car drove up near the curbing, and the Payne boy went to the car and was gone a few seconds and came back, and when he came back I had jerked loose from this Castleberry boy and started to run back to the Doss House, and when I started to run he started after me, and we both fell right in the middle of the street. We both got up about the same time, and he caught me by the hair and took me back to the corner where I met them. * * * He held on to my arm and got his knife out and says: 'See this knife? I'll cut your damn head off if you holler or try to get away.' Wesley Payne was laughing all the time at what the other one was saying, and when the Castleberry boy took his knife out and said he would cut my head off if I hollered or tried to get away, he put his hand on my arm and said: 'Don't try to get away; he will cut you.' And the street car conductor came down there to his car, and I hollered at him to make them turn me loose, and he came to me, and they turned me loose. The Castleberry boy started to fight at the conductor. * * * I met two policemen, and I told them that I wished they would arrest those two boys or something, and the policemen then went on up there to where the boys were. Mr. McCully, the policeman, called me back. He asked me if I wanted them arrested. I told him what they did, or tried to, and then I began crying, so I went on; and

they just arrested the Castleberry boy and left the other one standing there.''

Mrs. Hoyle testified further that the accused said to her, ''See this knife,'' and that she glanced at his hand and saw the handle only; did not see the blade or whether the knife was open; that she did not look particularly to see if she could see the blade, as she was so frightened she just took him at his word. Witness told the prosecuting attorney that she thought the boys were drunk from the way they acted. She made no complaint to the officers that she had been attacked with a knife. Her statement to them was, pointing to the accused, ''That boy just talked awful to me, and I want him arrested.''

Besides the officers and the street car conductor, there were several other eyewitnesses to the affair. None of them saw a knife, and none was found when the accused was searched.

At the close of the testimony for the state, as above outlined, the defendant interposed the following:

''At this time comes the defendant Prince Castleberry and demurs to the evidence offered in behalf of the state, for the reason that there is not sufficient evidence to justify a conviction either for assault with intent to kill or any kindred offense, and for the further reason that the issues of assault with intent to kill or of the allied offenses cannot be submitted under the information in this case.

''The Court: Demurrer overruled.

''Mr. Andrews: Exception.

''Comes now the defendant and moves the court to withdraw from the consideration of the jury the matters contained in the information—all matters contained in the information except the matter of simple assault.

"The Court: Motion denied.

"Mr. Andrews: Exception."

To warrant a conviction based upon either of the statutes hereinbefore quoted, the burden of proof was on state to show that the instrument used or about to be used by the assailants was either a deadly weapon or a sharp and dangerous weapon. An undescribed pocketknife is not a deadly weapon or a dangerous weapon per se. One witness alone saw the handle of a pocketknife which she could not describe nor tell whether it was open or closed. The several other eyewitnesses for the state saw no knife or other weapon, and none was found on the person of the accused when he was searched. Notwithstanding that fact, there being some evidence that there was a sharp and dangerous weapon, that question was for the jury. The assault occurred on the public street, on a dark and rainy night; the assailant, according to the prosecuting witness, exhibited a knife and threatened to cut her throat. Under those circumstances, the one assaulted had a right to assume, and the jury had a right to believe, that there was a sharp and dangerous weapon in the hands of the assailant. We hold, therefore, that there is evidence to support the verdict.

We think, however, that the facts disclosed show that there was no intent to kill, and slight intent to do great bodily harm. The penalty prescribed by section 1764 fixes the punishment at imprisonment in the penitentiary not exceeding five years or imprisonment in the county jail not exceeding one year, making no provision for a fine in any amount. Section 2306, Comp. St. 1921, provides that upon a conviction for any crime punishable by imprisonment in any jail or prison, where no fine is prescribed, the court may impose a fine upon the offender not exceeding $200, in addition to the term of imprisonment prescribed.

Considering all the aspects of this case, we have concluded that the judgment of the court below should be modified to imprisonment in the county jail for a period of 60 days and a fine of $200, and the judgment as so modified is affirmed.

MATSON, P. J., and DOYLE, J., concur.